**UNPUBLISHED**

UNITED STATES COURT OF APPEALS
FOR THE FOURTH CIRCUIT

**No. 21-4256**

UNITED STATES OF AMERICA,

Plaintiff - Appellee,

v.

DONNA GRAVES,

Defendant - Appellant.

Appeal from the United States District Court for the Western District of North Carolina, at Charlotte. Max O. Cogburn, Jr., District Judge. (3:19-cr-00279-MOC-DCK-2)

Submitted: March 22, 2022                                      Decided: April 11, 2022

Before WYNN and RICHARDSON, Circuit Judges, and KEENAN, Senior Circuit Judge.

Affirmed by unpublished per curiam opinion.

**ON BRIEF:** Joshua Sabert Lowther, LOWTHER | WALKER LLC, Atlanta, Georgia, for Appellant. William T. Stetzer, Acting United States Attorney, Charlotte, North Carolina, Amy E. Ray, Assistant United States Attorney, OFFICE OF THE UNITED STATES ATTORNEY, Asheville, North Carolina, for Appellee.

Unpublished opinions are not binding precedent in this circuit.

PER CURIAM:

Donna Graves was indicted, along with Elizabeth Williams and Gerald Harrison, and charged with conspiracy to commit wire fraud, in violation of 18 U.S.C. § 1349, and conspiracy to commit money laundering, in violation of 18 U.S.C. § 1956(h). The charges arose out of a scheme to defraud and steal from a senior citizen ("K.T.") who suffered from dementia and other physical and mental challenges. For the reasons that follow, we affirm Graves' conviction and sentence.

The evidence presented during the two-day trial, construed in the light most favorable to the Government, *see United States v. Burgos*, 94 F.3d 849 (4th Cir. 1996), established the following. K.T. lived in a small retirement community in Indian Land, South Carolina. Graves owned a cleaning company, and she and Williams cleaned K.T.'s home.

In October 2015, Graves and Williams moved K.T. from her home to a two-story apartment in an apartment complex in Charlotte, North Carolina. Graves was identified on the lease as K.T.'s emergency contact, and a credit card in K.T.'s name was used to pay the rent. Graves later contacted a realtor to list K.T.'s home for sale. Over the course of the following several months, the three coconspirators defrauded K.T. out of her home and life savings.

The jury found Graves guilty of both counts. Graves' total offense level of 28 included a 12-level increase because the offense caused a loss of greater than $25,000 and less than $550,000. U.S. Sentencing Guidelines Manual § 2B1.1(b)(1)(G) (2018). Graves was assigned a two-level increase because the offense involved the unauthorized transfer

2

or use of a means of identification unlawfully to produce or obtain any other means of identification, USSG § 2B1.1(b)(11)(C), and a two-level increase for abuse of a position of private trust, USSG § 3B1.1. Based on a criminal history category of I, Graves' advisory Sentencing Guidelines range was 78 to 97 months' imprisonment. The district court sentenced Graves to 97 months.

Graves first argues that her sentence is procedurally and substantively unreasonable. She claims that the district court failed to properly determine the amount of loss specifically attributable to her and failed to make adequate factual findings to support the adjustments under USSG § 2B1.1(b)(11) and USSG § 3B1.3.

We review a defendant's sentence "under a deferential abuse-of-discretion standard." *Gall v. United States*, 552 U.S. 38, 41 (2007). Under the *Gall* standard, a sentence is reviewed for both procedural and substantive reasonableness. *Id.* at 51. In determining procedural reasonableness, we consider whether the district court properly calculated the defendant's advisory Guidelines range, gave the parties an opportunity to argue for an appropriate sentence, considered the 18 U.S.C. § 3553(a) factors, and sufficiently explained the selected sentence. *Id.* at 49-51.

"When reviewing whether a district court properly calculated the Guidelines range we review the district court's legal conclusions de novo and its factual findings for clear error." *United States v. Lawing*, 703 F.3d 229, 241 (4th Cir. 2012) (internal quotation marks omitted). In calculating the loss amount for sentencing purposes, the district court must consider the larger of actual or intended loss. USSG § 2B1.1 cmt. n.3(A). The commentary defines "intended loss" as "the pecuniary harm that the defendant purposely

3

sought to inflict." USSG § 2B1.1 cmt. n.3(A)(ii). The loss must have been reasonably foreseeable, meaning "that the defendant knew or, under the circumstances, reasonably should have known" that the loss was a potential result of the offense. USSG § 2B1.1 cmt. n.3(A)(iv). "The [district] court need only make a reasonable estimate of the loss." USSG § 2B1.1 cmt. n.3(C). In cases "involving jointly undertaken criminal activity, a particular loss may be attributed to a defendant if it results from the conduct of others so long as the conduct was in furtherance of, and reasonably foreseeable in connection with the criminal activity." *United States v. Otuya*, 720 F.3d 183, 191 (4th Cir. 2013).

Graves argues that the district court clearly erred in attributing to her the total amount of loss resulting from the entire fraud scheme without making any particularized factual findings in this regard. However, the evidence established that Graves hired the realtor who listed K.T.'s home for sale, and the three coconspirators planned to divide the proceeds. The district court appropriately counted the listing price of $268,500 as intended loss. That amount alone was sufficient to apply the 12-level increase under USSG § 2B1(b)(1)(G). In addition, Graves was properly held accountable as a member of the conspiracy for the depletion of K.T.'s bank account and the debt incurred by the coconspirators on K.T.'s credit cards. Accordingly, we find no error in the district court's calculation of loss amount attributable to Graves for sentencing purposes.

Next, Graves asserts that the district court failed to make adequate factual findings to support the enhancement applied for the unauthorized transfer or use of a "means of identification" pursuant to USSG § 2B1.1(b)(11). Graves specifically withdrew this objection at sentencing. Therefore, she has waived this issue. *See United States v.*

4

*Duroseau*, 26 F.4th 674, 678 n.2 (4th Cir. 2022) ("Waiver is the intentional relinquishment or abandonment of a known right.") (citation and internal quotation marks omitted).

Finally, Graves claims that her sentence is procedurally unreasonable because the district court erred in applying the two-level enhancement for abuse of a position of private trust pursuant to USSG § 3B1.3. Graves argues that she was only a "cleaning lady" and that K.T.'s mental capacity was too diminished for her to trust Graves.

We "review de novo the district court's legal conclusion regarding the application of an abuse-of-trust enhancement." *United States v. Brack*, 651 F.3d 388, 392 (4th Cir. 2011). The district court's accompanying factual findings are reviewed for clear error. *Id*. Section 3B1.3 of the Guidelines provides for a two-offense-level increase "[i]f the defendant abused a position of public or private trust, or used a special skill, in a manner that significantly facilitated the commission or concealment of the offense." USSG § 3B1.3. Application Note 2 provides examples to which the enhancement applies, such as "a hospital orderly who exceeds or abuses the authority of his or her position by obtaining or misusing patient identification information from a patient chart," and "a volunteer at a charitable organization who exceeds or abuses the authority of his or her position by obtaining or misusing identification information from a donor's file." USSG § 3B1.3 n.2(B). We find no error in the district court's application of this enhancement.

Next, Graves claims that the prosecutor's comments describing Graves as a "puppet master" and "master manipulator" during opening and closing arguments amounted to prosecutorial misconduct. To establish prosecutorial misconduct, a defendant bears the burden of showing "(1) the prosecutor's remarks or conduct were improper and (2) that

5

such remarks or conduct prejudicially affected [the defendant's] substantial rights so as to deprive him of a fair trial." *United States v. Benson*, 957 F.3d 218, 234 (4th Cir.) (internal quotation marks omitted), *cert. denied*, 141 S. Ct. 934, and *cert. denied*, 141 S. Ct. 935 (2020). Because no objection was raised below, we review this claim for plain error. *United States v. Webb*, 965 F.3d 262, 267 (4th Cir. 2020).

We conclude that Graves cannot establish error, let alone plain error, because she fails to show that the Government's statements had any impact on the jury's decision. The Government's descriptions of Graves aligned with the evidence presented regarding her role in the conspiracy. Moreover, the evidence of Graves' guilt was overwhelming.

Finally, Graves argues that she was denied effective assistance of counsel. Specifically, Graves contends that her attorney's failure to strike Juror No. 8 or to object to the prosecutor's comments during opening and closing arguments amounted to ineffective assistance of counsel.

We do not consider ineffective assistance claims on direct appeal "unless it conclusively appears from the record that defense counsel did not provide effective representation." *United States v. Benton*, 523 F.3d 424, 435 (4th Cir. 2008) (internal quotation marks omitted). To succeed on an ineffective assistance of counsel claim, a "defendant must show that counsel's performance was [constitutionally] deficient" and "that the deficient performance prejudiced the defense." *Strickland v. Washington*, 466 U.S. 668, 687 (1984). We hold that the record does not conclusively show that trial counsel provided ineffective assistance and therefore this claim should be raised, if at all, in a motion under 28 U.S.C. § 2255.

6

Accordingly, we affirm the district court's judgment. We dispense with oral argument because the facts and legal contentions are adequately presented in the materials before this court and argument would not aid the decisional process.

*AFFIRMED*